[Civ. No. 22524. First Dist., Div. One. Mar. 28, 1966.]

JUNIETTA CUMMINGS, Plaintiff and Appellant, v. CALIFORNIA STATE TEACHERS' RETIREMENT BOARD, Defendant and Respondent.

Long & Levit, Bert W. Levit, Francis G. Willmarth and Dennis M. Day for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Harold B. Haas, Assistant Attorney General, for Defendant and Respondent.

SIMS, J.—Plaintiff has appealed from an adverse judgment in an action for declaratory relief in which she sought a determination that certain 1957 amendments to the Education Code were unconstitutional as applied to her because they reduced her pension as it should be computed under the law in effect on July 1, 1956. As a collateral issue she seeks, if successful on the principal issue, recovery of costs, expenses and attorney's fees on account of those who would be jointly benefited by the establishment of her contentions.

The provisions of law involved are those now found in the sections of chapter 4, of division 10, of part 2 of the Education Code, as recodified and renumbered effective September 18, 1959, by Statutes of 1959, chapter 2, page 983, section 13801 et seq. More particularly the question is whether plaintiff's pension as computed pursuant to amendments to that code, as the sections were numbered and existed prior to July 1, 1956, which became effective on that date (Stats. 1955, ch. 1395, p. 2491), would be greater than as computed at the time of her retirement under the law which stems from amendments to former sections of the code which became effective September 11, 1957 (Stats. 1957, ch. 2118, p. 3751).[1]

The record reflects, and it is conceded that if plaintiff's retirement allowance were computed under the law as it existed prior to July 1, 1956, it would be less than that which she

---

[1]All references herein, unless otherwise indicated, are to the Education Code. The section numbers in normal type are those currently found, and those italicized (underlined) are as the numbering existed prior to the 1959 revision.

has been allowed by the defendant board. The court found, and it is not controverted, that the allowance actually granted plaintiff upon her retirement on November 1, 1962, as computed under the applicable provisions of law, which have been substantially the same since September 11, 1957, is $199.93. She contends that this is a reduction from the allowance to which she became entitled by engaging in employment under the provisions of the 1955 amendments. ▪ In the absence of comparable advantages to the employee a retirement plan cannot be modified to reduce the benefits payable. (*Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 447-455 [326 P.2d 484] ; *Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765] ; *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 855 [179 P.2d 799].) Inquiry is therefore directed to the computation of plaintiff's retirement allowance under the applicable provisions of law as they existed from July 1, 1956, through September 10, 1957, pursuant to chapter 1395 of the Statutes of 1955.

Section 18 (§ *14635* now § 14359) provided insofar as is material herein: ''Upon retirement for service a member shall receive an annual annuity, sufficient when added to the portion of the retirement salary computed pursuant to Section 14632 [now § 14355], on the basis of his service, . . . to equal the fraction of one-sixtieth (1/60th) of his final compensation, set forth opposite his age at retirement, taken to the preceding completed quarter year, in the following table in the column applicable to his sex, multiplied by the number of years of his credited service. . . .''[2]

From the foregoing it is apparent that the ceiling for the retirement allowance fixed by the foregoing section is the equivalent of one-sixtieth (1/60th) of the product produced by multiplying (a) the fraction designated by the section, (b) the employee's final compensation, and (c) the number of years of his credited service.

(a) The court found, and it is not questioned, that 1.2604359 is the applicable fraction for plaintiff's age and sex as determined from the table originally set forth in the statute as adjusted by the board, pursuant to the authority conferred by the section, to interest rates and mortality tables current in connection with her retirement.

---

[2]Sections 16 (§ *14632* now § 14355) and 17 (§ *14633* now § 14356) also contain provisions relating to the retirement allowance, but since the formula set forth above prescribes the total figure to be paid it has been and is deemed controlling.

(b) Section 3 (§ *14276.6* now § 13832) provided in part: "'Final compensation' means the highest average annual compensation earnable by a member during any period of three consecutive years during his membership in the system. . . ." The court found that the final compensation based on full-time service in the years from October 31, 1959, through October 31, 1962, was at the rate of $572.60 per month.[3]

(c) The parties part company on the factor of "the number of years of his credited service." The court found, and it is not controverted, that prior to July 1, 1956, plaintiff rendered service in a status requisite for membership in the retirement system (see § *14258* as added by Stats. 1945, Fourth Ex. Sess. 1944, ch. 13, p. 115, § 2; now as subsequently amended § 13808) for a total of 15.75 years, of which 13.75 years embraced service which would fall within the definition of "part-time service" as that term was first defined in the legislation of 1955. (See § *14258.1* as added by Stats. 1955, ch. 1395, p. 2492, § 1.2; now § 13809). Section 20 of the 1955 legislation (§ *14636.1* now § 14360) provided: "For the purpose of calculating retirement allowances, credit for service rendered on a part-time basis in each school year shall be based on the ratio that service rendered bears to the minimum full-time service required for credit for a year of service." The court found, and it is agreed, that if this mandate is applied to the 13.75 years of part-time service rendered prior to July 1, 1956, the adjusted credit for service rendered would be 8.437 years.[4] It was further established that the number of years of full-time service to be credited after July 1, 1956, is 6.184 years.

The total years of full and part-time service equals 21.934 years. Under the law as it existed prior to July 1, 1956, "the total service credited shall be taken to the next lower completed quarter year of total time served." (§ *14441*, as enacted Stats. 1945, Fourth Ex. Sess. 1944, ch. 13, p. 125, § 2, and

[3]Although the statute refers to "annual annuity" and "annual compensation," the computations made by the parties and the lower court have all been made on a monthly basis, and that practice will be followed herein.

[4]According to the record this figure is obtained by dividing the total hours which petitioner worked in those years in which she was employed on a part-time basis by the normal annual hours of full-time service to produce 7.0309 actual equivalent years, which in turn were increased by the factor 1.2 because of the relationship of the 145 days minimum of section 13861 (§ *14310* as amended by Stats. 1955, ch. 1395, p. 2492, § 5), and the normal days of full-time service used in computing the normal hours.

as amended prior to Stats. 1955, ch. 1395, p. 2494, § 7.1; cf. present § 14052.) For the purposes of that law the total service was therefore reduced to 21.75 years, and the court so found.

Section 13860 (§ *14309*) has at all times provided: "The board shall determine the service rendered by members to be credited toward qualification for retirement, and shall fix retirement allowances and modify the allowances." Prior to the 1955 amendments, section *14310*, the precursor of section 13861, read: "The board shall fix the minimum time per day, per month, and per year, upon the basis of which one year of service and proportionate parts thereof are credited to members." Under the rules which were promulgated pursuant to this authority and were applicable prior to July 1, 1956, a member received credit for service if he taught a minimum one hour per day for 10 days in a month for eight months during the school year. There was no distinction between full-time and part-time service (cf. § 13809, formerly § *14258.1*, as added by Stats. 1955, ch. 1395, p. 2492, § 1.2), and anyone who satisfied the minimum requirements was entitled to be credited with the time served. ■ Computation of service was, and is, important for the purpose of determining whether the employee qualifies for retirement,[5] and for the purpose of computing the amount of contributions to be required of[6] and benefits to be paid[7] to an employee who is a member of the retirement system. (See § 14051, formerly § *14440*.)

The 1955 amendment modified the general powers of the board conferred by the provisions of section *14310* (§ 13861), *supra*. Section 5 revised that section to read, "Service rendered prior to July 1, 1956, shall be credited according to the provisions of this chapter which were applicable prior to such date." The revisions then specifically set forth certain minimum monthly and daily standards to obtain credit for one year of service "With respect to time served after June 30, 1956 . . ."

■ Plaintiff contends that the sentence first quoted makes it mandatory to compute her retirement allowance on the basis of the 21.75 years of service to which she was entitled

---

[5]See article 12, sections 14301-14314 (*art. 11*, §§ *14601-14615*) particularly section 14301 (§ *14601*).

[6]See article 8, sections 14101-14131 (§§ *14471-14495.2*).

[7]See article 13, sections 14351-14375 (*art. 12*, §§ *14631-14644*) particularly sections 14355-14362 (§§ *14632-14636.3*).

to be credited under the law as it existed prior to July 1, 1956. By using this figure the product is $261.63 per month, or $61.70 per month in excess of that which has been allowed.

In support of her position she alleges that it was only the 1957 amendments which authorized an adjustment to the allowance otherwise payable because the service credited was part-time rather than full-time. The particular amendment in question is the language now found in the second paragraph of section 13832 (§ *14276.6*) which defines "final compensation," and it reads: "The board may specify a different final compensation with respect to benefits based on part-time service rendered prior to July 1, 1956, for which credit was given under this system under board rules in effect prior to such date." (Stats. 1957, ch. 2118, p. 3751, § 1.) It is acknowledged that since the effective date of this amendment the factors generally used where part-time employment prior to July 1, 1956, is involved and those used in computing plaintiff's allowance are: (a) the fraction designated by section 14359 (§ *14635*), (b) a final compensation adjusted for part-time service, and (c) the full number of years of credited service.

In the instant case the court found, and it is acknowledged, that pursuant to the provisions of the 1957 amendment the "final compensation" for part-time service is obtained by taking that portion of the actual final compensation ($572.60) which is represented by a fraction of which the numerator is the full year equivalent of the part-time service (8.437) and the denominator is the actual number of years during which part-time service was rendered (13.75), which gives a figure of $351.35 for the monthly adjusted final compensation. This sum when multiplied by the proper fraction and the actual number of years produces an allowance of $101.49 for the 13.75 years of part-time service. The allowance for the remaining 8.184 years of full-time service, computed by using the full "final compensation," is $98.44, and the total allowance is $199.93.

In short, plaintiff contends that under the 1955 amendments there was no warrant to reduce either the number of years of service credited (§ 13861 (§ *14310*)), or the amount of final compensation (§ 13832 (§ *14276.6*)); and that the application of the 1957 amendment to reduce the amount of "final compensation" for the part-time years, of necessity causes a reduction in the allowance otherwise payable which is interdicted by constitutional principles.

The board concedes that there was no express authority to reduce the "final compensation" before the adoption of the 1957 amendments. It properly points out that plaintiff's computation fails to give effect to the provisions of section 14360 which were added as section *14636.1* at the same time as the new formula was adopted in the preceding section. Those provisions, which are set forth above, direct that for the purpose of calculating the retirement allowance, credit for service rendered on a part-time basis shall be adjusted in the ratio that the service rendered bears to the minimum full-time service required for credit for a year of service. This adjustment prior to September 11, 1957, was made by reducing the factor of "number of years of his credited service," and in this case reduced the 13.75 years in which part-time service was rendered to 8.437 years "for the purpose of calculating" the retirement allowance. The 8.437 years, together with the two pre-, and 6.184 post-July 1, 1956, years of full-time service, make a total of 16.621 years of service, which when multiplied by the applicable fraction and the full "final compensation" gives an allowance of $199.93, under the 1955 legislation, or the same figure as has actually been allowed plaintiff under the provision added in 1957.

Plaintiff argues that the foregoing computation fails to give effect to the mandate of section 13861 (§ *14310*) that "Service rendered prior to July 1, 1956, shall be credited according to the provisions of this chapter . . . which were applicable prior to such date"; and that the conflict between those provisions and the provisions of section 14360 (§ *14636.1*) must be resolved by giving the latter prospective operation only. This argument overlooks the content of section 13861 which as adopted in 1955 (§ *14310*; Stats. 1955, ch. 1395, p. 2492, § 5) substituted new minimum criteria for determining "one year of service" for the criteria previously fixed by rule of the board. Insofar as any of the provisions of the chapter "were applicable prior to" July 1, 1956, the credit theretofore allowed was to be recognized. This would be true as to eligibility for retirement (§ 14301 formerly § *14601*), the requirements for which were substantially reduced by the 1955 amendments, but which was phrased in the same format.

In fact section 14362 (§ *14636.3*) expressly recognizes that "In determining qualifications for retirement and calculating benefits payable upon death before retirement, a year of service shall be credited for each year during which the member

was employed throughout the year on a part-time basis and was engaged in his duties the full amount of time he was required by his employment to be so engaged.''

The provisions now found in sections 14359-14362 set up a whole new basis of calculating retirement allowances and can in no sense be deemed provisions of the chapter to which service had been credited under rules in existence prior to their adoption. Or conversely, it may be observed that the general statement in section 13861 (§ *14310*) cannot control the particular system of calculation found in sections 14359 and 14360, which does not deny credit for the years in which service has been recognized but expressly sets forth the weight to be given such service if it is in fact part-time. ██ ''It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.'' (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505]; and see *Bilyeu* v. *State Employees' Retirement System* (1962) 58 Cal.2d 618, 626 [24 Cal.Rptr. 526, 375 P.2d 442]; *Martin* v. *Election Commissioners* (1899) 126 Cal. 404, 411 [58 P. 932].)

The fact that in the computation under the 1957 amendment the board uses the total number of years is not an admission that the provisions of section 14360 do not apply to pre-1956 part-time service. The adjustment required by that section can be made by adjusting the years or the final compensation. By the 1957 amendments the Legislature authorized the latter method.[8] To further reduce the years would effect a double adjustment.

██ The construction for which plaintiff contends would have given her a windfall as compared with full-time employees. Prior to July 1, 1956, the retirement allowance was made up of (a) a sum computed from total years of service

_____

[8]The record reflects that the amendment to section *14276.6* (§ 13832) was sought in 1957 because of uncertainty as to whether the adjustment for years of part-time service required by section *14636.1* (§ 14360) applied to the calculation of minimum benefits under section *14633* (§ 14356). If it did it would serve to reduce them to less than the pre-July 1, 1956, standard. Whereas, if the years were left constant and the ''final compensation'' were adjusted to satisfy section *14636.1* the minimum benefits would remain constant except as they might be liberalized by changes in eligibility and amount.

(§ *14632, subd. (a)* now § 14355) ; (b) a sum computed from total earnings after July 1, 1944, up to certain annual maximums (§ *14632, subd. (b)* and § *14635.* The formula now referred to in section 14355, subdivision (b) and section 14359 was substituted by the 1955 legislation) ; and (c) a sum computed from years of service prior to July 1, 1944 (§ *14632, subd. (c),* Stats. 1953, p. 2288, and § *14636, subd. (a),* Stats. 1949, p. 2076, repealed 1956, Stats. 1957, First Ex. Sess. 1956, ch. 55, p. 435, § 18.) Although all employees full-time and part-time received credit for years of service once the minimum threshold was passed, the full-time employee who would generally have higher total earnings than a part-time employee would therefore be entitled to a greater allowance by reason of the use of that factor in the calculation. If plaintiff's contention was correct a lifetime full-time teacher and a former part-time teacher who both had the same "final compensation" at the time of eligibility for retirement would receive the same allowance. Such an intent should not lightly be attributed to the Legislature.

The construction placed by defendant board on the provisions of the code as they existed from July 1, 1956, to September 11, 1957, is warranted by its terms. "Of particular importance here is the rule that the administrative construction of a statute by those charged with its interpretation and enforcement is entitled to great weight, and courts will generally not depart from such an interpretation unless it is clearly erroneous. [Citations.]" (*Misasi* v. *Jacobsen* (1961) 55 Cal.2d 303, 308 [10 Cal.Rptr. 850, 359 P.2d 282].)

The foregoing makes it unnecessary to consider plaintiff's claim that she is entitled to attorney's fees and costs and expenses as in a representative suit. (Cf. *Winslow* v. *Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274, 282-286 [153 P.2d 714] ; and *Stratton* v. *City of Long Beach* (1961) 188 Cal. App.2d 761, 772 [11 Cal.Rptr. 8].)

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.