[Civ. No. 29594. Second Dist., Div. One. Aug. 16, 1966.]

ROY L. BLOCK, Plaintiff and Appellant, v. CALIFORNIA PHYSICIANS' SERVICE, Defendant and Respondent.

John R. Nimocks for Plaintiff and Appellant.

Peart, Baraty & Hassard, John J. Balluff and Merrill Albert for Defendant and Respondent.

LILLIE, J.—In an action for declaratory relief plaintiff sought a declaration by the court that a clause entitled "PART SEVEN, C. ACTS OF THIRD PARTIES," contained in a Group Health Service agreement. issued by defendant California Physicians' Service, and an order of payment signed by him thereunder are illegal and void as against public policy, and that the sum of $1,714.34 held in trust by his counsel, Everett E. Demler, belongs to him. Defendant cross-complained for declaratory relief, breach of contract and money had and received. The cause was submitted to the trial judge on a stipulation of fact. Plaintiff appeals from the judgment decreeing "PART SEVEN, C. ACTS OF THIRD PARTIES" to be a valid and legally enforceable clause in the agreement; and ordering that plaintiff take nothing by reason of his complaint and reimburse defendant in the amount of $1,714.34 out of sums collected by him in a personal injury action brought and settled on his behalf by Demler, and that on its cross-complaint defendant recover said amount from Demler.

The following facts are undisputed. California Physicians' Service is a nonprofit California corporation. Group Health Service agreement (CPS 516-6730) issued by defendant Service provides:

### "PART SEVEN, C. ACTS OF THIRD PARTIES

"If the Member is injured through the act or omission of another person CPS shall provide the benefits of this Agreement, only on condition that the Member shall agree in writing:

"(1) to reimburse CPS to the extent of benefits provided, immediately upon collection of damages by him, whether by action at law, settlement or otherwise, and

"(2) to provide CPS with a lien, to the extent of benefits provided by CPS. The lien may be filed with the person whose act caused the injuries, his agent or the Court.

"If the Member recovers from the third party the reasonable value of services rendered as a benefit of this Agreement, the Member Physician who rendered such services shall not be required to accept the fees paid him by CPS as full payment, but may charge the difference, if any, between the fee paid to him by CPS and the amount collected by the injured Member for such professional services." On January 17, 1963, plaintiff was injured in an automobile accident, following which he retained Everett E. Demler to represent him in an action for damages against Leslie C. Gray. In August 1963, plaintiff made a claim against defendant for payment of certain

medical and hospital expenses incurred by him as a result of his injuries, and on August 22, 1963, plaintiff delivered to defendant the following document signed by him:

"ORDER FOR PAYMENT OF MEDICAL BILLS

"I, ROY L. BLOCK, hereby authorize and direct my attorney, Everett E. Demler, to reimburse California Physicians' Service in the amount of any professional and hospital service costs paid by them pursuant to the Acts of Third Parties clause in the California Physicians' Service Contract; such payment to be made from the sum or sums due me as my share of any recovery of my claim for personal injuries against, Leslie C. Gray, in the event such settlement or recovery be forthcoming."

Subsequent thereto, defendant paid on behalf of plaintiff's hospital and medical bills the sum of $1,714.34; plaintiff recovered a sum of money in his action against Gray by way of settlement, and his counsel, Demler, holds $1,714.34 in trust pending the outcome of this action.

The sole issue is the validity and enforceability of "PART SEVEN, C. ACTS OF THIRD PARTIES" in Group Health Service agreement executed by defendant Service. Running through appellant's argument is the thread of a theory, previously held to be untenable (*California Physicians' Service v. Garrison*, 28 Cal.2d 790 [172 P.2d 4, 167 A.L.R. 306]), that while proclaiming that it is "a nonprofit corporation performing only a public service," defendant Service is really an insurance company and the agreement is "one of insurance and governed by the same laws as any other insurance contract." He predicates his claim, that the operation of the clause at issue and the order executed by him thereunder amounts to an assignment of a cause of action for personal injuries or an equitable subrogation prohibited by law, on a series of unanswered questions calling for speculative answers, all outside of the record, purporting to show the ingenuity of "insurance carriers" "to devise language to circumvent" the applicable statutory prohibitions.

In 1946, the Supreme Court established the status of California Physicians' Service as a nonprofit corporation incorporated under section 593a, Civil Code (reenacted as § 9201, Corp. Code) and expressly held that it is not engaged in the business of insurance within the meaning of the regulatory insurance statutes of this state. (*California Physicians' Service v. Garrison*, 28 Cal.2d 790 [172 P.2d 4, 167 A.L.R. 306].)

The court followed the many unsuccessful efforts of the Legislature to meet the "great social need for adequate medical benefits at a cost which the average wage earner can afford to pay" (p. 801) and described the undertaking of that responsibility by the medical profession and the enactment of section 593a, Civil Code, authorizing the organization of corporations such as defendant Service. Holding that it does not fall within the scope of insurance regulations and is not engaged in the insurance business, the court ruled that California Physicians' Service "clearly . . . assumes no risk" but "is a mere agent or distributor of funds" created by the monthly dues of the beneficiary members, that "all risk is assumed by the physicians, not by the corporation" (pp. 804-805), and "looking at the plan of operation as a whole, 'service' rather than 'indemnity' is its principal object and purpose." (P. 809.) There is pointed up in *Garrison, supra,* the distinction between the services rendered to its members by defendant Service, as a nonprofit corporation organized to provide medical and hospital expenses to them at the lowest possible cost on a nonprofit basis, and the money payment benefits afforded to the assureds by insurance companies which for profit, undertake the writing of insurance against risk on a premium basis.

As most emphatically urged by appellant, it is the established rule in California that an assignment of a cause of action for personal injuries is void and that, in the absence of statute, a cause of action for tortious injury to the person is not subject to subrogation. ([§ 956, Civ. Code] § 573, Prob. Code; *Fifield Manor* v. *Finston,* 54 Cal.2d 632, 639-640 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; *Peller* v. *Liberty Mut. Fire Ins. Co.,* 220 Cal.App.2d 610, 612 [34 Cal.Rptr. 41]; see also *Bilyeu* v. *State Employees' Retirement System,* 58 Cal.2d 618, 624 [24 Cal.Rptr. 562, 375 P.2d 442]; and *Mills* v. *Farmers Ins. Exchange,* 231 Cal.App.2d 124, 128 [41 Cal.Rptr. 650].) It is appellant's position that regardless of the "tag" placed on the clause in the agreement, the results flowing therefrom are the same as those flowing from assignment, subrogation and equitable subrogation, the ultimate effect of which is to pass the title to a cause of action from one person to another. He quotes from *Fifield Manor* v. *Finston,* 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813], and *Peller* v. *Liberty Mut. Fire Ins. Co.,* 220 Cal.App.2d 610 [34 Cal.Rptr. 41].

Applying the rule of these authorities and the definitions contained therein to the express language of PART SEVEN,

C. ACTS OF THIRD PARTIES, it is at once apparent that the clause constitutes neither an assignment of a personal chose in action nor an equitable subrogation, for thereunder there is transferred no cause of action for personal injuries. In *Fifield Manor* v. *Finston*, 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813], plaintiff directly sued the third party tortfeasor to recover the costs of medical care rendered by it to an aged person under a life care contract following an automobile accident. Plaintiff had no right to bring the action; the court held the contract between plaintiff and the aged person to be invalid insofar as it attempted to give plaintiff the right to sue the third party tortfeasor on its own behalf. ■ "While subrogation and assignment have certain technical differences, each operates to transfer from one person to another a cause of action against a third, and the reasons of policy which make certain causes of action nonassignable would seem to operate as forcefully against the transfer of· such causes of action by subrogation. . . .

■ "Whether the transfer be technically called assignment or subrogation or equitable assignment or assignment by operation of law its ultimate effect is the same, to pass the title to a cause of action from one person to another." (54 Cal.2d 632, 640.) *Fifield Manor* v. *Finston, supra,* was thereafter cited and approved in *Bilyeu* v. *State Employees' Retirement System,* 58 Cal.2d 618, 624 [24 Cal.Rptr. 562, 375 P.2d 442]. *Peller* v. *Liberty Mut. Fire Ins. Co.,* 220 Cal.App.2d 610 [34 Cal.Rptr. 41], involved an action for declaratory relief brought by insured plaintiffs for a determination of their rights arising out of a provision in an automobile insurance contract issued by defendant wherein the latter agreed " '(1) To pay all reasonable expenses incurred within one year from the date of accident for medical services' "; and under the heading of "Subrogation," it provided " 'In the event of any payment under the medical expense coverage of this policy, the company shall be subrogated to all the right of recovery, therefor, which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.' " (Pp. 610-611.) Plaintiffs were injured and incurred medical expenses which defendant refused to pay unless and until they assigned to it their right of recovery for personal injuries to the extent of said payments. The provision was held to be void

and unenforceable under section 956, Civil Code (and section 573, Probate Code) since the result is to transfer the insureds' cause of action against a third party tortfeasor to the **insurer.**

A comparison of the provisions in *Peller* with PART SEVEN, C. ACTS OF THIRD PARTIES herein, reflects no similarity. In *Peller* the clause expressly required that the company be subrogated to plaintiffs' right of recovery against the third party tortfeasor and the assignment to it of their claims to the extent of the medical payments paid by it under its automobile insurance contract. Such provision, if valid, would have entitled the company to bring an action directly against the third party tortfeasor to the extent of all medical payments made by it to plaintiffs under the terms of the contract. On the other hand, PART SEVEN, C. ACTS OF THIRD PARTIES, contains no requirement, express or implied, that defendant Service be subrogated to plaintiff's right of recovery against the third party or that plaintiff assign to it his claim against the third party to the extent of medical payments made to him by it under the agreement. Further, under the clause in question, defendant Service does not require the member to enforce any claim he might have against the third party tortfeasor, nor does it give defendant Service any right to bring on its own behalf an action against the third party to the extent of medical payments made by it to the member. The obligation of defendant Service to provide medical and hospital service benefits resulting from an injury caused by a third person is conditioned on the member's written agreement to reimburse it ''in the event'' recovery is made by him from the third party tortfeasor; and its rights, if any, to reimbursement arise only when and if the member has made a recovery by settlement or judgment against the third party tortfeasor, and then, only against the member from funds recovered. Paragraph (2) of the clause requiring the member to agree to provide defendant Service with a lien to the extent of benefits provided by it, the same to be filed with the third party tortfeasor, his agent or the court, read in connection with the preceding Paragraph (1) therein, clearly contemplates recovery against the third party tortfeasor by an action at law, settlement or otherwise. Nothing requires the member to seek recovery for his injuries and if no claim is made or suit is filed against the tortfeasor and no recovery is effected there would be no lien.

The operation of PART SEVEN, C. ACTS OF THIRD PARTIES, neither directly or indirectly effects a transfer to defendant Service of any cause of action a member might have

against a third party tortfeasor nor subjects a cause of action for tortious injury to the person to subrogation. The clause is contrary neither to statutory and case authority nor to the public policy expressed in section 9201, Corporations Code, but is part of an over-all program sanctioned and encouraged by the Legislature and designed by defendant Service to provide medical and hospital services on a nonprofit basis at a minimum expense to those participating. (*California Physicians' Service* v. *Garrison*, 28 Cal.2d 790, 801-802 [172 P.2d 4, 167 A.L.R. 306].) ▮▮ By becoming a member of the plan under a Group Health Service agreement plaintiff has voluntarily associated himself with the public policy of this state. While he has a right to seek to be made whole, it is unfair for him to seek enrichment by double recovery which would result from retention of all proceeds of the settlement of his suit against Gray and of all medical and hospital benefits paid to him by defendant Service under its agreement—for the same injuries —all eventually at the cost of the participating members of the plan.

Analogous to PART SEVEN, C. ACTS OF THIRD PARTIES, is the attorney's contingent fee contract in personal injury cases. Neither assigns or transfers any part of the cause of action against a third party tortfeasor for personal injuries; each is valid as operating only upon monies, if and when, recovered from the third party. The contingent fee contract has been upheld by our courts as providing an equitable lien upon the client's recovery as security for services rendered or to be rendered. (*Bartlett* v. *Pacific Nat. Bank*, 110 Cal.App.2d 683, 689 [244 P.2d 91]; *Hendricks* v. *Superior Court*, 197 Cal. App.2d 586, 589 [17 Cal.Rptr. 364].) Said the court in *Hendricks*: "An attorney's contingent fee contract does not operate to transfer part of the cause of action to the attorney but only gives him a lien on his client's recovery. (*Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632, 641 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813].) He thus has no right to intervene in the main action. (*Marshank* v. *Superior Court* (1960) 180 Cal.App.2d 602, 605 [4 Cal.Rptr. 593]; *Fields* v. *Potts* (1956) 140 Cal.App.2d 697, 698 [295 P.2d 965].)'" (P. 589.)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.